CLERK'S OFFICE
A TRUE COPY
Sep 14, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin



AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

❐ Original          ❐ Duplic

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br>a black iPhone and a grey iPhone currently in the<br>custody of FBI in the Eastern District of Wisconsin,<br>bearing inventory numbers 1B132 and 1B133 | )<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. **23-M-444 (SCD)**

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the \_\_\_\_\_Eastern\_\_\_\_\_ District of \_\_\_\_\_Wisconsin\_\_\_\_\_
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before \_\_\_\_\_9-28-23\_\_\_\_\_ *(not to exceed 14 days)*
❐ in the daytime 6:00 a.m. to 10:00 p.m.      ☑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to \_\_\_\_\_Hon. Stephen C. Dries\_\_\_\_\_.
*(United States Magistrate Judge)*

❐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❐ for \_\_\_\_\_ days *(not to exceed 30)*      ❐ until, the facts justifying, the later specific date of _____ .

Date and time issued:      9-14-23.  2:00  pm

*Judge's signature*

City and state:    Milwaukee, Wisconsin

U.S. Magistrate Judge Stephen C. Dries
*Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : | | |
| Inventory of the property taken and name(s) of any person(s) seized: | | |

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

The property to be searched is (1) a grey iPhone with no case and a crack on the back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B133 and (2) a black iPhone with no case and a crack on the front and back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B132 (collectively, the "Devices").

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving LASHAWN DAVIS, and/or any other known or unknown co-conspirators, since June 2021, including but not limited to:

(a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators;

(b) Photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme;

(c) Photographs, videos, communications, and other records related to drug possession and trafficking;

(d) Records related to money transfers;

(e) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(f) Evidence related to the acquisition and/or use of access devices;

(g) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(h) Evidence related to loan applications and other financial instruments;

(i) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(j) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(k) Travel records and location information associated with the subjects of this investigation;

(l) The identity of the person(s) who created or used the account;

(m) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

2. Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3. As used above, the term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin



CLERK'S OFFICE
A TRUE COPY
Sep 14, 2023
s/ JDH
Deputy Clerk, U.S. District Court
Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>a black iPhone and a grey iPhone currently in the<br>custody of FBI in the Eastern District of Wisconsin,<br>bearing inventory numbers 1B132 and 1B133 | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.  23-M-444 (SCD) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A

located in the _____Eastern_____ District of _____Wisconsin_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 USC §§ 371, 511, 922(g),<br>1029, 1956, 1957, 2312, 2313,<br>and 21 USC §§ 841(a) & 846 | Conspiracy, Altering VINs, Possession of a Firearm by a Felon, Access Device<br>Fraud, Money Laundering, Transportation of Stolen Vehicles, Sale/Receipt of<br>Stolen Vehicles, Possessing with Intent to Distribute Drugs, Drug Conspiracy |

The application is based on these facts:

See Affidavit

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

**Shane Hoffmann**  Digitally signed by Shane Hoffmann
Date: 2023.09.13 10:30:29 -05'00'

*Applicant's signature*

FBI SA Shane Hoffmann

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  9-14-23

*Judge's signature*

City and state:  Milwaukee, Wisconsin                 U.S. Magistrate Judge Stephen C. Dries

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN
## APPLICATION FOR A SEARCH WARRANT

I, Shane Hoffmann, being first duly sworn, hereby depose and state as follows:

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the examination of property—two electronic devices, described in Attachment A—which are currently in law enforcement possession, and the extraction from that property of electronically stored information described in Attachment B.

2.      I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since September 2015.  I am currently assigned to the Milwaukee Division – Madison Resident Agency. Since becoming a Special Agent, I have received specialized training in conducting criminal investigations, and my responsibilities include conducting investigations of alleged criminal violations of federal statutes and laws.  I have participated in the execution of search warrants in various judicial districts, including the recovery of records, contraband, and other types of property. I have received training in computer technology, and I have on numerous occasions reviewed the content of targets' phones and computers, email accounts, and social media accounts for evidence of criminal activity.

3.      The United States, including the FBI, is conducting a criminal investigation of LASHAWN DAVIS (DOB: 05/07/2000) and others known and unknown, regarding possible violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing

vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy). For the reasons that follow, there is probable cause to believe evidence of these crimes will be located on the cellular devices described in Attachment A.

4. This affidavit is based upon my personal knowledge, and upon information reported to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is intended to show only that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

## IDENTIFICATION OF THE DEVICES TO BE EXAMINED

5. The property to be searched is (1) a grey iPhone with no case and a crack on the back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B133 and (2) a black iPhone with no case and a crack on the front and back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B132 (collectively, the "Devices").

6. The warrant for which I am applying would authorize the forensic

examination of the Devices for the purpose of identifying electronically stored data particularly described in Attachment B.

## PROBABLE CAUSE

7. This investigation involves, among other crimes, the organized theft and resale of high-end motor vehicles. I know from my training and experience that there is a large amount of money associated with the theft and sale of high-end motor vehicles. I also know that high-end vehicles over the retail price of $50,000 have means of identifying the vehicle other than vehicle identification number (VIN) plates and stickers, such as: hidden VIN stamps, identifying parts numbers, etching on glass windows, and electronic data stored in the vehicle's Electronic Control Unit (ECU). Based on this investigation, I believe that the auto theft ring with which DAVIS is involved is replacing the stolen vehicles' VIN plates and VIN stickers but not changing the hidden identifying features.

## Vehicle Thefts

8. Forensic evidence and cellular records for DAVIS's known phone number have linked DAVIS to several vehicles stolen from the Milwaukee General Mitchell International Airport in early 2022. In the fall and winter of 2022, law enforcement surveillance routinely observed DAVIS associated with stolen vehicles, some of which had altered VINs, around the Milwaukee area. One example of DAVIS's involvement with a stolen vehicle is as follows.

9. On March 20, 2022, shortly after 1:00 p.m., the MCSO was alerted to a

3

Dodge Ram pickup truck bearing Missouri license plate 8KBJ78 and VIN 3C63R3RL5LG219772 leaving the parking structure at the Milwaukee General Mitchell International Airport.

10. Deputy D. Scott of the MCSO responded and positioned his squad car in front of the parking lane where the Dodge Ram pickup truck was located, exited his squad, and observed the rear passenger window was broken or missing, consistent with someone attempting to steal the vehicle by breaking the window and entering the vehicle. Deputy Scott exited his squad and ordered the driver to get out of the vehicle. The driver of the Ram pickup truck attempted to flee, struck another vehicle, and then struck a boulder. The driver exited and fled on foot back into the parking structure. Deputies observed a subject, later identified as DAVIS, in the parking structure sweating and breathing heavily with gravel and debris on his forearms.

11. The Ram pickup truck owner, later identified as A.J.L., did not give consent for anyone to take and drive his vehicle from the parking structure.

12. While on scene, DAVIS said that he came to the parking structure in a black Jeep. Deputies looked in the parking structure for a vehicle matching this description and located a black Jeep driving through the structure and exiting. Deputies stopped a black Jeep Grand Cherokee as it exited the parking structure. The driver and sole occupant was identified as Amya V. Williams (DOB:01/12/2001). Deputies observed the VIN displayed on the windshield to be 1C4RJFBG2LC954690.

4

13.     According to Wisconsin Department of Transportation records, the VIN 1C4RJFBG2LC954690 was registered to a black 2020 Jeep Grand Cherokee, and the registered owner was Amya V. Williams. However, the VIN plate on the windshield of the Jeep Grand Cherokee was later determined to be a fake VIN. It was determined that the genuine VIN of the Jeep Grand Cherokee was 1C4RJFCTXMC584523.  According to Wisconsin DOT records, the vehicle bearing genuine VIN 1C4RJFCTXMC584523 was actually registered to D.J.J., who did not give consent for anyone to take and drive his vehicle from the parking structure. D.J.J. stated that he parked his vehicle in the parking structure on March 11, 2022. Interflight Parking records show that D.J.J.'s vehicle was removed from the structure on March 13, 2022.

14.     During a custodial interview, DAVIS denied driving the Dodge Ram pickup truck, but admitted that he was at the parking structure to act as a lookout for "Deandre Littles" for $1,500. DAVIS admitted to arriving at the parking structure in the Jeep Grand Cherokee.

15.     On March 21, 2022, law enforcement officers processed both vehicles for evidence. Inside the Jeep Grand Cherokee, deputies located electronic key programming equipment, numerous vehicle key fobs, center punches, which are hand tools with a handle/shaft and pointed tip, other VIN stickers, and documents, including a notebook with handwritten vehicle information. Inside the Ram pickup truck, law enforcement officers located an Advanced Diagnostics brand cable, which is of the same brand as one

5

of the key programmers and a center punch of the same type located in the Jeep Grand Cherokee.

**DAVIS's Association with SHIELDS**

16. The investigation has revealed that DAVIS is a close associate of DIAUNTE D. SHIELDS (DOB: 02/18/1995). An analysis of available phone tolls showed that DAVIS (phone number 708-490-4687) and SHIELDS (phone number 404-918-9857) have been in contact with each other since at least June 2021.

17. On or about January 3, 2022, messages from devon5578@icloud.com, an account linked to SHIELDS, showed the following exchange between SHIELDS and DAVIS's subscribed phone number 708-490-4687:

> SHIELDS: I know where a trx at
> SHIELDS: I land at 830, we can jump right on it
> …………………
> DAVIS: I'm ready when u ready

Based on my training, experience, and knowledge attained through the investigation, I believe in this exchange SHIELDS and DAVIS are planning to steal a Dodge Ram TRX truck after SHIELDS returned from a trip.

18. On or about March 20, 2022, messages from devon5578@icloud.com between SHIELDS and DAVIS showed DAVIS reaching out to SHIELDS for help as SHIELDS told DAVIS to hide because the police are everywhere. SHIELDS told DAVIS that SHIELDS was outside and that SHIELDS will come get DAVIS. I believe that this exchange occurred when DAVIS was caught while attempting to steal a Dodge Ram from

6

Milwaukee General Mitchell International Airport (described previously). In his attempt to avoid arrest he was reaching out to SHIELDS for assistance.

19. An email dated November 16, 2022, addressed to jeff071293@icloud.com, an iCloud account linked to SHIELDS, from toolmart@autobodytoolmart.com showed an order confirmation from America's Automotive Supply Source with billing and shipping information for "Shawn Mobile Glass, LASHAWN DAVIS, 1673 S 9th St, Milwaukee, WI." The order was for over $300 for materials related to auto glass repair. A May 2023 search of the Wisconsin Department of Financial Institutions did not return any results for a registered business named "Shawn Mobile Glass." Investigators are aware that the theft of vehicles and the application of new VINs requires the breaking and repair of auto glass. Based on my training, experience, and knowledge gained from the investigation, I believe that DAVIS was using a fictitious business name to have tools and supplies delivered to his residence in furtherance of his criminal activities.

20. A review of DAVIS's Cashapp transactions shows the transfer of money between DAVIS and SHIELDS, including SHIELDS's known associates, from December 2021 through June 2023 (the end date of requested records). During this timeframe, DAVIS received and/or sent money to SHIELDS, NAKIYA WRIGHT (SHIELDS's girlfriend), CASHA GRIFFIN (SHIELDS's girlfriend), and BRANDON MULLINS (a known associate of SHIELDS). For example, on or about February 11, 2023, DAVIS sent MULLINS $350.00 with the note "for D." I believe DAVIS was sending money to

MULLINS at the request of SHIELDS.  On or about June 2, 2023, SHIELDS sent DAVIS $1,200.  In the timeframe referenced, over $10,000 was transferred between DAVIS and the referenced individuals.

### DAVIS's Firearm Possession and Drug Distribution

21.    A photo with a capture date of November 22, 2022, from jeff071293@icloud.com, an account associated with SHIELDS, showed a partially broken brick of a white substance that resembled cocaine.  An apparent black handgun was also observed.  Geolocation data resolved to Alexander Lofts, 1673 S. 9th Street.  I know that DAVIS utilizes an apartment at that location and had a felony conviction prior to November 2022, making him legally prohibited from possessing firearms.

22.    In January 2023, a Confidential Human Source (CHS) provided information to law enforcement that a person known to the CHS as "Shawn" was involved in the trafficking of heroin, cocaine, fentanyl and crystal methamphetamine.  The CHS stated the CHS had known "Shawn" since the summer of 2022, and "Shawn" resided in an apartment complex at the intersection of S 9th Street and W Mitchell Street in Milwaukee, Wisconsin. The CHS was shown a Milwaukee County Sheriff's Department booking photo of DAVIS and positively identified DAVIS as "Shawn."[1]

---

[1] The CHS has been providing information to the FBI since July 2022, has conducted multiple controlled drug buys, and has provided information that has led to more than 5 federal search warrants which resulted in the recovery of cocaine, heroin and fentanyl.  The CHS was questioned and provided information both known and unknown to investigators. The information provided by the CHS was corroborated and was found to be reliable.  The CHS has

8

23.     In February 2023, law enforcement utilized the CHS to conduct a controlled purchase of methamphetamine from DAVIS. Law enforcement met with the CHS prior to the controlled buy and conducted a recorded phone call with DAVIS to facilitate the controlled buy of crystal methamphetamine.  The CHS had previously told DAVIS that the CHS was looking to purchase one ounce of crystal methamphetamine. The CHS reported that DAVIS agreed to sell the crystal methamphetamine and directed the CHS that this would occur at S 9th Street and W Mitchell Street in Milwaukee, Wisconsin.

24.     Law enforcement searched the CHS and the CHS's vehicle prior to providing the CHS with $1,400 in prerecorded United States currency for the purchase of one ounce of crystal methamphetamine.  The CHS then departed for the parking lot to the northeast of S 9th Street and W Mitchell Street while law enforcement maintained visual surveillance.

25.     Surveillance observed DAVIS arrive at the location and park his silver Chevy Impala. DAVIS then entered a furniture store located at 840 W Historic Mitchell Steet, Milwaukee, Wisconsin.  The investigation has determined that the furniture store is managed by ESTEBAN CARDENAS. After approximately eight minutes, DAVIS was observed exiting the rear of the furniture store and going towards the CHS's vehicle. DAVIS was observed entering the front passenger seat of the CHS's vehicle and then

a prior State of Wisconsin conviction for drug trafficking and a firearm offense. The CHS was cooperating in exchange for consideration in connection with arrests and charges for drug trafficking and firearms offenses.

exited and returned to his vehicle.  The CHS departed the location under the direction of law enforcement.

26.     When debriefed by law enforcement, the CHS advised that DAVIS came to the CHS's vehicle from the direction of the furniture store. DAVIS provided the CHS with a clear plastic sandwich bag which contained a white crystal substance which the CHS understood to be crystal methamphetamine. The CHS then provided DAVIS with the prerecorded United States currency.  Officers recovered the white crystal substance in a clear plastic sandwich bag from the CHS's vehicle and then conducted a search of the CHS's person and vehicle for any money or contraband and did not locate any. The white crystal substance field tested positive for methamphetamine and fentanyl and had a total weight of approximately 14.7 grams.

### DAVIS's iCloud Account

27.     On June 18, 2023, the Honorable United States Magistrate Judge Stephen C. Dries, Eastern District of Wisconsin, authorized a search warrant for the contents of lashawd214@icloud.com.     Apple     confirmed     that     the     iCloud     account lashawd214@icloud.com was created on April 2, 2021, using the name LASHAWN DAVIS, address of 2315 Gunderson, Berwyn, Illinois.  Associated phone numbers included 708-490-4687 and 414-293-7508, both of which investigators have linked to DAVIS.

28.     A review of content returned from Apple for lashawd214@icloud.com

showed numerous photographs depicting firearms, apparent illegal drugs, United States currency, financial information, and vehicles as exemplified below:

a. Photographs with a capture date of November 7, 2022, depicted an orange Ford Bronco Raptor that matched the vehicle seen by surveillance teams in Milwaukee, Wisconsin, during early November 2022. The dashboard VIN seen on the orange Ford Bronco Raptor in Milwaukee was 1FMEE5JR9NLA58756 which Ford stated was never manufactured. Shipping records from Cheetah Cargo Corp indicated that on November 5, 2022, an orange Ford Bronco, matching the orange Ford Bronco from DAVIS's iCloud account, was shipped from Milwaukee, Wisconsin, to Fayetteville, Georgia. On September 6, 2023, investigators in Georgia recovered the orange Ford Bronco and determined that the true VIN was 1FMEE5JR9NLA51323. Using the true VIN, investigators determined that the orange Bronco Raptor was stolen from a Ford assembly plant in Michigan in October 2022.

b. A photograph with a capture date of January 1, 2023, depicted a black male that matches known booking photographs of DAVIS talking a selfie. DAVIS was holding an apparent handgun in his right hand. Location information associated with the photograph resolved to the area of 5211 N Hopkins Street, Milwaukee, Wisconsin. The investigation has shown that SHIELDS, DAVIS, and associates utilized a garage at 5206 N Hopkins Street, Milwaukee,

11

Wisconsin, to process stolen vehicles.

c. A photograph with a capture date of February 20, 2023, depicted a hand holding a white substance wrapped in plastic that was consistent with illegal drugs. Location information associated with the photograph resolved to the area of 840 W Historic Mitchell Street, Milwaukee, Wisconsin.  This is the location of Ultimate Home Furniture which was the store managed by ESTEBAN CARDENAS, and where DAVIS went prior to the controlled purchase described above.  The photograph was also taken around the same time frame of the controlled purchase.

d. A photograph with a capture date of June 9, 2023, depicted a black male that matches known booking photographs of DAVIS fanning an undetermined amount of United States currency in denominations of $50 and $100.  Location information associated with the photograph resolved to 910 W Historic Mitchell Street, Milwaukee, Wisconsin, a known address for DAVIS.

e. A screenshot showing activity on "briansclub.cm" which is a known underground website to obtain stolen credit card information.  There are also images depicting complete credit card information including card number, expiration date, CVV number, full card holder name, address, phone number, and email address. I believe that this compromised credit card information relates to unsuspecting victims of identity theft.

12

<u>**DAVIS's La Crosse County Arrest on August 27, 2023**</u>

29.     On August 27, 2023, in La Crosse County, Wisconsin, troopers from the Wisconsin State Patrol attempted a traffic stop on a silver Chevrolet Impala bearing Wisconsin license plate ARF-9505, further referred to as the "silver Chevy Impala." This was the same silver Chevy Impala that investigators electronically monitored from approximately November 15, 2022, through early February 2023. The traffic stop was initiated for excessive speed. The silver Chevy Impala fled, and a pursuit ensued. The pursuit reached speeds of 100 miles per hour before the lone male subject pulled over and fled the vehicle. During the foot pursuit the male subject threw a package over a fence and hopped the fence before being apprehended. The individual identified himself as LASHAWN DAVIS. The discarded package was recovered and contained a white powdery substance. The substance field tested positive for the presence of cocaine with a total weight of approximately 251 grams.

30.     Upon returning to the silver Chevy Impala, troopers noted a marijuana smell. A probable cause search of the vehicle resulted in the recovery of the following items:

    a. Two freezer wrapped packages each containing a brownish/purplish powdery substance found in the trunk. The substance field tested positive for the presence of fentanyl with a total weight of approximately 367 grams.

    b. A large duffel bag with digital scales, a respirator, acetone, blenders, and rolls

of packaging found in the trunk.

c. Wisconsin license plate AHY2464 found in the trunk which returned to a 2018 Dodge Durango reported stolen to the Chicago Police Department with a theft date of June 18, 2023. The registered owner's address was Mt. Pleasant, Wisconsin.

d. North Dakota license plate 518EAJ which returned to a 2022 white Chevrolet Corvette registered to Tashay Northern using VIN 1G1YC2D48N5118139. Carfax returned no shipping information or window sticker information for the VIN – indications that the VIN is likely fraudulent. Tashay Northern was also the registered owner of a Jeep Trackhawk that was stolen from the Milwaukee General Mitchell International Airport in October 2021. Upon recovery it was determined that the Jeep Trackhawk had its VIN altered.

e. A 9 mm bullet.

f. **Two Apple iPhones, the target Devices, including a grey iPhone with no case and a crack on the back, and a black iPhone with no case and a crack on the front and back.**

31. I am aware, from my training and experience, that cell phones and other electronic communication devices are often used by those involved in illegal activities to store information including text messages, multimedia messages, and a history of incoming and outgoing calls, contact/address book information, photographs, videos,

14

and other data related to their criminal activities. As decfibed abobe, I know that DAVIS has used electronic communications in furtherance of his criminal activity. Similarly, I am aware that many of those who use cell phones often will maintain a list of their contacts and their associates' names, phone numbers, and other identifying information, as well as communications with those people. I am further aware that cell phones frequently contain SD cards or other removable memory/storage devices upon which the data and information described above may be stored. I am further aware that many cell phones capture or otherwise store global positioning system ("GPS") location tracking/logging files, may provide additional evidence as to the target(s) travels, and may provide evidence as to the location where the alleged illegal actions occurred.

32. The information sought from the Devices, described more fully in Attachment B, is relevant to the investigation of DAVIS and others as it will allow law enforcement to identify potential sources and/or traffickers involved in either firearms or narcotics trafficking, assist in the identification of customers, provide further evdience of vehicle theft and resale, and identify other potential co-conspirators.

33. The Devices are currently in storage at FBI in Milwaukee, Wisconsin. Through my training and experience, I know that the manner in which the Devices have been stored ensures their contents are, to the extent material to this investigation, in substantially the same state as they were when the Devices first came into law enforcement's possession.

15

34.     Based on my training and experience, I use the following technical terms to convey the following meanings:

a.  Wireless telephone:  A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals.  These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones.  A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone.  In addition to enabling voice communications, wireless telephones offer a broad range of capabilities.  These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet.  Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device.

b. Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

c. Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

d. GPS: A GPS navigation device uses the Global Positioning System to display its current location. It often contains records the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System (generally abbreviated "GPS") consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

e. PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for

18

entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

f. Pager: A pager is a handheld wireless electronic device used to contact an individual through an alert, or a numeric or text message sent over a telecommunications network. Some pagers enable the user to send, as well as receive, text messages.

g. IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

19

h. Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

35. Based on my training, experience, and research, I know that the Devices have capabilities that allow them to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

36. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

37. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Devices were used, the purpose of their use, who used them, and when. There is probable cause to believe that this forensic electronic evidence might be

20

on the Devices because:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

21

e. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

38. *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant for which I am applying would permit the examination of the Devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the Devices to human inspection in order to determine whether it is evidence described by the warrant.

39. *Manner of execution.* Because this warrant seeks only permission to examine devices already in law enforcement's possession, the execution of this warrant does not involve the physical intrusion onto a premises. Consequently, I submit there is reasonable cause for the Court to authorize execution of the warrant at any time in the day or night.

## CONCLUSION

40. I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the Devices described in Attachment A to seek the items described in Attachment B.

22

## <u>ATTACHMENT A</u>

The property to be searched is (1) a grey iPhone with no case and a crack on the back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B133 and (2) a black iPhone with no case and a crack on the front and back which is currently in the custody of FBI in the Eastern District of Wisconsin, bearing inventory number 1B132 (collectively, the "Devices").

This warrant authorizes the forensic examination of the Devices for the purpose of identifying the electronically stored information described in Attachment B.

**ATTACHMENT B**

1. All records on the Devices described in Attachment A that relate to violations of 18 U.S.C. § 371 (conspiracy), 18 U.S.C. § 511 (altering or removing vehicle identification numbers), 18 U.S.C. § 922(g) (possession of a firearm by a prohibited person), 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. §§ 1956 and 1957 (money laundering and unlawful monetary transactions), 18 U.S.C. §§ 2312 and 2313 (transportation of stolen vehicles and sale or receipt of stolen vehicles), 21 U.S.C. § 841(a) (distribution of and possession with intent to distribute controlled substances), and 21 U.S.C. § 846 (drug conspiracy), involving LASHAWN DAVIS, and/or any other known or unknown co-conspirators, since June 2021, including but not limited to:

   (a) Location information associated with the co-conspirators, call and message records associated with the co-conspirators;

   (b) Photographs and videos of stolen vehicles, communications about stolen vehicles, records related to vehicle repair shops, records related to VINs and titles, records related to the transportation of vehicles, records related to the advertisement of vehicles, and records related to other preparatory steps taken in furtherance of the scheme;

   (c) Photographs, videos, communications, and other records related to drug possession and trafficking;

   (d) Records related to money transfers;

(e) Photographs, videos, communications, and other records related to bank accounts and money transfer accounts owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(f) Evidence related to the acquisition and/or use of access devices;

(g) Evidence related to any businesses owned or utilized by subjects of this investigation in relation to the crimes under investigation;

(h) Evidence related to loan applications and other financial instruments;

(i) Evidence indicating how and when the account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crimes under investigation and to the account owner;

(j) Evidence indicating the account owner's state of mind as it relates to the crimes under investigation;

(k) Travel records and location information associated with the subjects of this investigation;

(l) The identity of the person(s) who created or used the account;

(m) The identity of the person(s) who communicated with the account user about matters relating to the crimes under investigation.

2.	Evidence of user attribution showing who used or owned the Devices at the time the things described in this warrant were created, edited, or deleted, such as logs, phonebooks, saved usernames and passwords, documents, and browsing history.

3.	As used above, the term "records" includes all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as flash memory or other media that can store data) and any photographic form.

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant.  The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.